*337
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Two questions are before us in this zoning dispute: first, whether a Town Planning Board “took action” within the meaning of the relevant statutes when it rejected petitioners’ final subdivision application and second, if so, whether such action automatically extinguished preliminary plat approval. Both questions we answer in the affirmative.
 

 Since 1990, petitioners Gil Aloya, Sonia Aloya and Nava Gueron have sought to develop a 45-acre property in the Town of Stony Point, located in Rockland County. Hoping to subdivide the property into 27 lots and build single-family homes, petitioners received sketch plan approval from the Town of Stony Point Planning Board, and on December 4, 1991 obtained unanimous, unconditional preliminary approval of their plan. On March 1, 1992, petitioners submitted an application for final subdivision plat approval. Pursuant to General Municipal Law § 239-n, which requires town planning agencies to refer certain applications to county planning boards before taking final action, the Board referred petitioners’ plan to the Rock-
 
 *338
 
 land County Planning Department. Citing insufficient information to enable adequate review of drainage impacts, the Department recommended disapproval of the application and noted that the General Municipal Law required a “majority plus one” vote of the Board to override its findings.
 
 [1]
 

 On July 28, 1994, the Board, which consists of seven members, held a public hearing and then voted on petitioners’ application. Only six of the Board members attended and a total of five votes were cast — four to approve the application, one against. Because the “majority plus one” requirement of General Municipal Law § 239-n (5) had not been satisfied, the motion for approval failed and, as reported in the minutes, the application was “turned down.”
 

 Petitioners commenced a CPLR article 78 proceeding, alleging that the July 28 vote was not an “action” within the meaning of Town Law § 276 because the Board failed to take one of three steps specified in that provision: it did not approve, conditionally approve or deny their application.
 
 [2]
 
 Petitioners argued that the Board’s failure to “take action” within 62 days of the public hearing warranted a determination, under Town Law § 276 (8), that by default the application be “deemed granted approval.”
 
 [3]
 
 Supreme Court dismissed the petition, holding that the Board “took action” and that petitioners’ failure to obtain a supermajority vote to override the Department’s recommendation constituted disapproval of the application. The Appellate Division affirmed (230 AD2d 790).
 

 On January 26, 1996, petitioners submitted another application to the Board, once again requesting final subdivision approval. Within three days, the Board rejected the application, this time on the ground that a moratorium prohibited accept
 
 *339
 
 ing, processing, reviewing or granting approval of “major subdivision” applications unless sketch approval had been unconditionally granted before September 22, 1994 (Local Laws, 1995, Nos. 5, 8 of Town of Stony Point; Local Laws, 1994, No. 7). Petitioners instituted a second article 78 proceeding against the Board, seeking default approval of their 1996 application, or in the alternative a determination that the preliminary approval obtained in 1991 remained in effect, and their application for final approval therefore avoided the moratorium.
 

 Supreme Court concluded that the Planning Board had not revoked preliminary plat approval obtained in 1991 and ordered consideration of petitioners’ application.
 
 [4]
 
 The Appellate Division, however, reversed, holding that the Planning Board’s July 28, 1994 unconditional disapproval of petitioners’ application ended the review process, and that petitioners’ second application “at best, could be considered a new application for plat approval which would be subject to the building moratorium enacted before the ‘reapplication’ occurred” (241 AD2d 73, 76).
 

 We agree with both Appellate Division determinations. By voting, failing to secure the supermajority necessary to override the Department’s recommendation and thus rejecting petitioners’ final application, the Board “took action” within the meaning of Town Law § 276 (6) and (8). Moreover, denial of the final application extinguished prior preliminary approval, subjecting petitioners’ subsequent plans to the moratorium.
 

 The Board “Took Action”
 

 The answer to petitioners’ first question — whether the Town Planning Board “took action” when it failed to gain a supermajority — lies in a series of statutory provisions that illuminate a clear path to the conclusion we reach.
 

 Town Law § 276 (6) requires a Planning Board to “act” on a final plat application in one of three ways. The Board can resolve to approve, conditionally approve or disapprove a final subdivision plan. Typically, such Board “action” would be governed by General Construction Law § 41, which provides:
 

 “[w]henever three or more public officers are given any power or authority, or * * * are charged with
 
 *340
 
 any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of the whole number of such persons * * * shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty. For the purpose of this provision the words ‘whole number’ shall be construed to mean the total number which the board * * * would have were there no vacancies and were none of the persons or officers disqualified from acting.”
 

 Under certain specified circumstances, however, Town Planning Boards must refer applications for final plat approval to County Planning authorities before “tak[ing] final action” (General Municipal Law § 239-n [2], [3], [4] [b];
 
 see also, Matter of King v Chmielewski,
 
 76 NY2d 182, 188).
 

 If the County Planning authority disapproves or recommends modification of the application — the situation before us in this case — General Municipal Law § 239-n (5) then explicitly mandates that “the referring body shall not act contrary to such recommendation except by a vote of a majority plus one of all the members thereof.” Moreover, we are told the objective behind the Legislature’s explicit supermajority requirement: to prevent “municipal agencies from disregarding a county agency’s known objections” (Mem of Div of Budget, Bill Jacket, L 1993, ch 544 [discussing identical supermajority provision in General Municipal Law § 239-m]; Mem of Dept of State, Bill Jacket, L 1994, ch 358 [noting that proposed General Municipal Law § 239-n would establish the same procedures for referral of subdivision plat applications as those implemented in General Municipal Law § 239-m]).
 

 Petitioners concede that on July 28, 1994, the Town Planning Board did not approve their final application as there was no “majority plus one” vote required to override the County Planning Department’s negative recommendation. They argue, however, that pursuant to General Construction Law § 41, the Board failed to act because there was no majority vote in favor of disapproval of their application. As such, petitioners claim they are entitled to default approval pursuant to Town Law § 276 (8). Permitting default approval pursuant to Town Law § 276 (8) despite failure to obtain a “majority plus one” would, however, negate the explicit requirement of General Municipal Law § 239-n (5) and defeat the legislative purpose behind that requirement. County modifications and disapprovals could eas
 
 *341
 
 ily be disregarded if disapproval for failure to obtain a super-majority did not constitute “action.”
 

 We thus conclude, as did the Appellate Division, that the turning down of petitioners’ final plat application for failure to gain supermajority approval constituted dispositive Board action under the law.
 

 Board Rejection Terminated Preliminary Approval
 

 Petitioners’ second argument — that their 1996 application avoids the moratorium because preliminary approval obtained in 1991 continued in effect even after rejection of their final application in 1994 — is equally unpersuasive. Petitioners assert that there is no “express language” in any statute providing that denial of final approval results in termination of preliminary approval, and that pursuant to Town Law § 276 (5) (h) the Town Planning Board cannot revoke preliminary approval absent affirmative action.
 

 In defining preliminary plat approval as “the approval of the layout of a proposed subdivision * * *
 
 subject to
 
 the approval of the plat in final form” (emphasis added), Town Law § 276 (4) (c) makes plain that the validity of preliminary plat approval is contingent on final approval. Indeed, as noted by the Appellate Division and consistent with the definition in Town Law § 276 (4) (c), “preliminary” means “temporary and provisional” anticipating the occurrence of a contingency (241 AD2d 73, 76,
 
 supra
 
 [citing Black’s Law Dictionary 1180 (6th ed 1990)]). Once a final application is denied and the two-stage review process complete
 
 (see, Matter of Long Is. Pine Barrens Socy. v Planning Bd.,
 
 78 NY2d 608, 612), the subdivision plan can no longer be approved, rendering preliminary plat approval invalid as the essential contingency — final approval — cannot arise. Thus, by operation of law denial of petitioners’ final plat application itself rescinded the preliminary approval.
 

 Petitioners’ reliance on Town Law § 276 (5) (h) is misplaced. That provision authorizes the Town Planning Board to revoke preliminary plat approval where an owner fails to submit a final application within six months of receiving preliminary approval. Petitioners deduce from this that it was necessary for the Board to take formal action to revoke their preliminary plat approval. The statute, however, empowers the planning authority to rescind preliminary approval
 
 before
 
 determination of the final application. As such, it is inapposite here.
 

 Petitioners’ remaining arguments are likewise without merit.
 

 
 *342
 
 Accordingly, the orders of the Appellate Division should be affirmed, with costs.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur; Judge Rosenblatt taking no part.
 

 Orders affirmed, with costs.
 

 [1]
 

 . General Municipal Law § 239-n (5) states that if “such county, metropolitan or regional planning agency recommends modification or disapproval of a referred plat, the referring body shall not act contrary to such recommendation except by a vote of a majority plus one of all the members thereof.”
 

 [2]
 

 . Town Law § 276 (6) provides that “the planning board shall by resolution conditionally approve with or without modification, disapprove, or grant final approval and authorize the signing of such plat”
 
 (see,
 
 § 276 [6] [b] [applicable where Planning Board deems final plat to be in substantial agreement with an approved preliminary plat]; § 276 [6] [d] [i] [3] [applicable where Planning Board is lead agency]; § 276 [6] [d] [ii] [3] [applicable where Planning Board is not lead agency]).
 

 [3]
 

 . According to Town Law § 276 (8), in “the event a planning board fails to take action on a preliminary plat or a final plat [within 62 days], or within such extended period as may have been established by the mutual consent of the owner and the planning board, such preliminary or final plat shall be deemed granted approval.”
 

 [4]
 

 . Supreme Court dismissed petitioners’ claim seeking default approval of their 1996 application for failure to join the Town Clerk as a party.